TRIVELLA & FORTE, LLP
Jonathan Bardavid
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
Tel. No.: (914) 949-9075

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

DEENA PLOTKA,

                                    Plaintiffs,            **Case No.: 19-CV-194**

              -against-                               **COMPLAINT**

CENTRAL SYNAGOGUE – BETH EMETH a/k/a      Jury Trial Demanded
CENTRAL SYNAGOGUE,

                                  Defendant.

---------------------------------------------------------------------x

Plaintiff, Deena Plotka for her Complaint against Defendant Central Synagogue – Beth Emeth a/k/a Central Synagogue, alleges as follows:

## PRELIMINARY STATEMENT

1. This action is brought pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. ¶¶ 201 *et* seq. and New York Labor Law ("NYLL") Article 6 §§ 190 *et seq.*, Labor Law Article 19 §§ 650 *et seq.*, 12 New York Codes, Rules and Regulations ("NYCRR") Part 142, to recover, *inter alia*, unpaid overtime compensation owed to Plaintiff and for Defendant's failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is located in this district and a substantial part of the events or omissions giving rise to the claim occurred in the district.

4. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5. Plaintiff was, at all relevant times, an adult individual residing in New York County, New York.

6. At all times mentioned herein, upon information and belief, Defendant, Central Synagogue – Beth Emeth a/k/a Central Synagogue (hereinafter the "Defendant" or "Synagogue"), was and still is a non-for-profit religious organization organized pursuant to Section 501(c)(3) of the Internal Revenue Code of the United States and is located at 123 East 55th Street, New York, New York 10022.

## FACTS

7. Plaintiff began her employment with the Defendant on or about June 16, 2014.

8. Plaintiff was initially hired as the Administrative Assistant to the Associate Rabbi and Community Engagement Rabbi.

9. As an Administrative Assistant, Plaintiff's primary duties included providing direct administrative support to the Associate Rabbi and the Rabbi for Community Engagement, sustaining all administrative matters; acting as Life Cycle/Pastoral Care Lead Assistant; acting as Clergy Study HHD Ushers coordinator, coordinating study groups and maintaining Associate Rabbis' Clergy Directed Funds.

2

10. Throughout her employment, Plaintiff regularly made room reservations, ordered books, scheduled appointments, reconciled reimbursements for Rabbi Salth, submitted check requests, sent emails and added pastoral notes to the database for the Rabbis for whom she assisted.

11. Although at some point Plaintiff's title was changed to Lifecycle Event and Pastoral Care Coordinator, her primary duties and responsibilities did not change and she continued to serve as an Administrative Assistant to Rabbi Mo Salth. Plaintiff also served as an Assistant to Rabbi Lev-Cohen for 2014 to 2016 and from 2017-2018. The job description for this position acknowledged that Plaintiff was responsible for providing administrative support including coordinating schedules, calendars, filtering requests, screening calls, managing meeting logistics, locations, reservations, letter writing, managing financials, reimbursements, and check requests. In addition to these duties for 2016 to 2017 Plaintiff also served as the Clergy Study Concierge and was responsible for answering the phones, greeting congregants, ordering office supplies, overseeing the master calendar for the Clergy Study Department and reading and responding to Department e-mails.

12. Plaintiff was paid a flat weekly salary regardless of the number of hours that she worked.

13. Specifically, from in or about June 2014 through in or about May 31 2015, Plaintiff was paid $50,000.00 per year.

14. From in or about June 1, 2015 through in or about May 31, 2016 Plaintiff was paid $52,500.00 per year.

15. From in or about June 1, 2016 through in or about May 31, 2017 Plaintiff was paid $55,000.00 per year.

16.     From in or about June 1 2017 through in or about May 31, 2018 Plaintiff was paid $60,000.00 per year.

17.     From in or about June 1, 2018 through to date Plaintiff was paid $61,800.00 per year.

18.     Plaintiff was initially scheduled to work from 9:00 A.M. to 5:30 P.M. Monday through Thursday with an hour break for lunch and Friday 9:00 A.M. to 4:30 P.M. with an hour break for lunch. Plaintiff's hours were subsequently changed to 8:30 A.M. to 5:00 P.M. Monday through Thursday with an hour break for lunch and Friday 9:00 A.M. to 4:30 P.M. with an hour break for lunch.

19.     During her initial employment the Synagogue required Plaintiff to fill out a time sheets and instructed Plaintiff to write down 7 hours of work per day, regardless of the fact that Plaintiff worked well in excess of 7 hours in a day.

20.     Plaintiff regularly worked in excess of her scheduled shift and regularly worked through lunch as it was not possible to complete her assigned tasks within her scheduled shift.

21.     Indeed, the job description provided to Plaintiff upon hire acknowledged that "[t]hese are the team's general working hours. Because we all share a particular work ethic, we often stay until the job is done and sometimes need to arrive earlier than expected."

22.     Throughout her employment, Plaintiff typically arrived and began work between 8:00 and 8:15 A.M. and left well after 6:00 P.M. many nights.

23.     Plaintiff regularly did not take any break for lunch and worked through her allotted meal break.

24.     Plaintiff was often the first employee to arrive each day and the last to leave. Indeed,

4

her supervisors and the Rabbis she assisted would often comment as they left for the day "Deena you are still here?"

25. On average Plaintiff worked at least eight hours of unpaid overtime each week throughout her employment.

26. For example, during week ending October 4, 2014 Plaintiff worked at least 55 hours but was not paid any overtime. During the week ending February 14, 2015 Plaintiff worked at least 47 hours but was not paid for any overtime. For week ending May 21, 2016 Plaintiff worked at least 46.75 hours and was not paid any overtime. For week ending September 6, 2017 Plaintiff worked at least 49 hours and was not paid any overtime. For week ending October 28, 2017 Plaintiff worked at least 47 hours and was not paid any overtime. Plaintiff worked many hours of overtime in 2018 as well. The above-referenced pay periods are merely illustrative and are by no means an exhaustive list of the dates wherein the Plaintiff worked in excess of forty hours per week without receiving overtime compensation.

27. Notwithstanding the extensive overtime worked by Plaintiff and the acknowledgement of same by Plaintiff's supervisors and the Rabbis employed by the Synagogue, Plaintiff was never paid for any of the overtime she worked.

28. Plaintiff did not exercise independent discretion and judgment over matters directly related to the management or operations of the Synagogue.

29. Plaintiff did not lead a team of other employees assigned to complete major projects for the Synagogue.

30. At all relevant times, Plaintiff was unilaterally misclassified as an exempt employee by the Defendant.

31. Moreover, when Plaintiff sought to evoke protections afforded to allegedly exempt employees, the Defendant refused to treat and/or compensate Plaintiff as an exempt employee. Under the FLSA an exempt employee is required to be paid for the entire week if the employee performed any work during said week. The Synagogue did not follow this requirement with Plaintiff. Specifically, when Plaintiff's father was dying the week of December 14, 2015, she performed at least twenty hours of work during that week from her home and her father's hospital bed. During that week the Synagogue treated Plaintiff as a non-exempt employee forcing her to borrow from next years paid time off bank or risk being docked pay for the hours she spent caring for her dying father.

32. Defendant's failure to pay proper wages in a timely manner has been without good faith, willfully, and with reckless disregard for Plaintiff's rights.

33. Plaintiff has been damaged by Defendant's conduct in misclassifying her as an exempt employee and failing to pay her overtime. .

## AS AND FOR A FIRST CAUSE OF ACTION
## FAIR LABOR STANDARD ACT – UNPAID OVERTIME

34. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if they were set forth herein.

35. At all times relevant to this Complaint, Defendant has been and continues to be an "employer" within the meaning of the FLSA, 29 U.S.C. § 207(a)(2).

36. At all times relevant to this Complaint, Defendant "employed" Plaintiff by suffering or permitting her to work within the meaning of the FLSA, 29 U.S.C. § 203(g).

37. At all times relevant to the Complaint, Defendant was an "enterprise engaged in

commerce or in the production of good for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s).

38. Upon information and belief, the gross annual volume of sales made, or business done by Defendant for the years 2014 through 2018 was not less than $500,000.00 per year.

39. At all times relevant to the Complaint, Defendant was and is still subject to the overtime pay requirements of the FLSA.

40. According to the FLSA, implementing regulations, and the cases interpreting same, the Plaintiff was not properly classified as exempt.

41. Defendant employed Plaintiff for workweeks longer than 40 hours and willfully failed to compensate Plaintiff for the time worked in excess of 40 hours per week at a rate of at least one and one-half times her regular rate of pay for each hour worked in excess of 40 per week, in violation of the requirement of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

42. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

43. Defendant's failure to pay overtime caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from the Defendant her unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW- UNPAID OVERTIME

44. Plaintiff repeats, reiterates and realleges each and every allegation contained in the

preceding paragraphs as if they were set forth herein.

45. Defendant is an "employer" within the meaning contemplated pursuant to New York Labor Law Article 6 § 190, Labor Law Article 19 and cases interpreting same.

46. The Plaintiff is an "employee" within the meaning contemplated pursuant to New York Labor Law Article 6, Article 19, 12 NYCRR § 142-2.14 and cases interpreting same.

47. Title 12 NYCRR §142-2.2 requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate…. The applicable overtime rate shall be paid for each workweek for working time over 40 hours."

48. Here, the Plaintiff regularly worked in excess of 40 hours yet was not paid at a rate of one and one-half times her regular hourly rate for all such overtime hours she was suffered or permitted to work.

49. According to the Labor Law, implementing regulations, and the cases interpreting same, the Plaintiff was not properly classified as exempt.

50. New York Labor Law § 633 provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, [s]he may recover in a civil action the amount of such underpayments, together with costs and such reasonable attorney's fees."

51. By the foregoing, Defendant violated New York Labor Law and 12 NYCRR Part 142 and is liable to Plaintiff in an amount to be determined at trial, including statutory plus interest, liquidated damages, and attorney's fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
### NEW YORK WAGE THEFT PREVENTION ACT

52. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs as if they were set forth herein.

53. Pursuant to New York Labor Law Article 6 § 195(3): "every employer shall furnish each employee with a statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rates of pay; the number of regular hours worked, and the number of overtime hours worked."

54. Here the Plaintiff did not receive a statement with every payment of wages listing all required information, including the correct hours she worked or her correct rate of pay.

55. Based upon the foregoing Defendant has violated New York Labor Law Article 6 § 195(3) and is liable to the Plaintiff in an amount to be determined at trial, including statutory penalties, plus interest, attorneys' fees, and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE

56. Plaintiff repeats, reiterates and realleges each and every allegation contained in the

9

preceding paragraphs as if they were set forth herein.

57. Defendant willfully failed to furnish Plaintiff with a wage notice during the entirety of her employment, including the date of her hire, as required by New York Labor Law § 195(1).

58. Due to Defendant's willful violation of the New York Labor Law, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees provided by New York Labor Law § 198(1-b).

**WHEREFORE**, Plaintiff demands judgment as follows:

(a) On the First Cause of Action against Defendant, in an amount to be determined at trial, plus interest, attorneys' fees and costs, plus all other damages available under the Fair Labor Standards Act;

(b) On the Second Cause of Action against Defendant, in an amount to be determined at trial, plus interest, attorneys' fees and costs, plus all other damages available under the New York Labor Law;

(c) On the Third and Fourth Causes of Action against Defendant, in an amount to be determined at trial including statutory penalties, together with costs and attorneys' fees provided by New York Labor Law § 198(1-b); and

(d) For such other, further, and different relief as the Court may deem just and proper, including the costs, attorneys' fees, and disbursements of this action.

Dated: White Plains, New York
January 8, 2019

Yours, etc.,
TRIVELLA & FORTE, LLP

BY: JONATHAN BARDAVID, ESQ.
*Attorneys for Plaintiff*
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
Tel. No.: (914) 949-9075